MURRAY & COMPANY *et al.*, plaintiffs in error, *vs.* PAUL JONES, Sr., *et al.*, defendants in error.

1. A purchaser of property at an assignee's sale in bankruptcy, under an order of the Register to sell subject to incumbrances generally, is not estopped from denying that a particular incumbrance is a good and valid incumbrance, and he may show that a mortgage on the property

purchased was made by the bankrupt in fraud of his creditors; and is therefore void.

2 A *bona fide* purchaser, without notice of a promissory note and mortgage to secure it, who buys before the debt becomes due, is protected against a defense, that the mortgage was made by the debtor, in anticipation of bankruptcy and to defraud his creditors.

Bankrupt. Incumbrance. Promissory notes. Mortgage. Before Judge HOPKINS. Fulton County. At Chambers. June 2d, 1873.

Murray & Company *et al.*, filed their bill against Paul Jones, and A. M. Perkerson, deputy sheriff of said county, alleging substantially as follows : That the defendant, Jones, was the pretended owner and holder of a promissory note made by Rondeau & Company to J. C. Kyle or bearer, for $8,000 00, dated February 13th, 1871, payable twelve months after date, and of two mortgages, one made by said Rondeau & Company on the machinery, engine and boiler, etc., in their furniture factory, and the other by Mrs. Amy H. Sells, a member of the firm of Rondeau & Company, on the house and lot on which said factory was located, to secure the payment of the said note to the said Kyle; that Rondeau & Company were adjudicated bankrupts on the 19th of March, 1871, on a creditor's petition filed on the 6th of March, 1871, and that W. R. Hammond, Esq., was duly elected assignee of said bankrupts on the 4th day of April thereafter, and a deed of assignment, conveying all their property, made to him by the Register; that said assignee was placed in possession of the mortgaged property as the property of the bankrupts; that on the 3d of July, 1871, the said mortgaged property was sold at public outcry by the assignee, under an order of Court, passed on the 12th of June, 1871, directing it to be sold, subject to incumbrances, and the complainants became the purchasers at the price of $2,435 00, and a deed was regularly made to them by the assignee on the 6th of October, 1871; that on the 19th of December, 1871, said Kyle transferred the said note and mortgages to defendant Jones, and when the note fell due Jones foreclosed both the mortgages and had execu-

tions issued and levied upon the property; that the proper-
ty described in the mortgage executed by Rondeau & Com-
pany was advertised to be sold at sheriff's sale on the first
Tuesday in June, 1873; that the note and mortgages were
never proven in the bankrupt Court; that at the time of the
execution of the note and mortgages Rondeau & Company
were hopelessly insolvent, their indebtedness being $35,000,
or more, and their assets, not including the property in dis-
pute, which was mortgaged for its full value, less than $1,000,
which was allowed the bankrupts as their exemptions.   Ron-
deau & Company owed complainants over $4,000 00.

Complainants further charged, on information and belief,
that the mortgages were made by Rondeau & Company with
intention to delay, defraud, and defeat them and other credi-
tors in the collection of their debts, and that Kyle knew their
insolvent condition and fraudulent intention at the time he
accepted the mortgages, and did it to enable them to cover up
their property and defeat their creditors.

Complainants further charged, on information and belief,
that said mortgages were executed within one month prior to
the filing of the petition in bankruptcy against said Rondeau
& Company, in contemplation of bankruptcy and insolvency,
said Rondeau & Company being insolvent at the time, and
said Kyle then having reasonable cause to believe them to be
insolvent, and to be acting in contemplation of insolvency,
and that they made said mortgages with a view to prevent
their property from coming to their assignee in bankruptcy,
and prevent the same from being distributed under the Bank-
rupt Act, and to defeat, impair, hinder and impede the pro-
vision of said Act, and that therefore they are fraudulent and
void.   The bill further charged, on belief, that defendant
Jones received said note and mortgages with a full knowledge
of the facts aforesaid and of the fraud.   Prayed an injunction
to restrain the impending sheriff's sale, and for a delivery up
and cancellation of the mortgages and *fi. fas.* and for sub-
poena, etc.

The bill was supported by two affidavits, as follows:

W. H. Brooker deposed, that on the 16th day of February, 1871, he saw Rondeau and J. C. Kyle alone together in Rondeau's private office. He walked in where they were and dunned Rondeau for a debt which Rondeau & Company owed him. Rondeau refused to pay it, and put him off. He then asked him to give him their note. He did not want to do this, but upon deponent's threatening to proceed against him in the Courts, he reluctantly gave the note. Rondeau walked out, and deponent asked Kyle if he could see any good reason why Rondeau should refuse to give him a note. Kyle responded that he could not. Deponent then asked Kyle if he was going to let Rondeau & Company have any money. He replied that he had thought about letting them have some, but did not think he would now. Deponent remembered the date because it was the day he was admitted to the Supreme Court.

A. S. Mayson deposed, that in February or March, 1871, he had a conversation with J. C. Kyle. Deponent had bought some goods, and Kyle asked him if he had not bought them of Rondeau & Company. Deponent answered, "Yes." Kyle then said that Rondeau & Company *had* owed him money, but he had got even with them; that the way he got his money from them was by going to their store from day to day, after breakfast, and staying till dinner, and returning after dinner and staying till supper, until he got his money. He said he believed they were broke, but he had got his money and was satisfied. He remarked that "they were the damndest hardest cases he had ever had anything to do with."

The answer of Paul Jones admitted that he was the owner and holder of the notes and mortgages, as alleged in the bill, and stated that he purchased them for a valuable consideration, and in good faith. Admitted the bankruptcy of Rondeau & Company, as alleged, and that W. R. Hammond was elected or appointed assignee on the 4th of April, 1871. Admitted the assignment to the assignee by the Register, the order of Court allowing the sale, the sale, and the assignee's deed to complainants. Admitted the transfer of the notes and mortgages, as alleged, and the foreclosure and levy. Admit-

ted that the note and mortgages were not proven in the Bankrupt Court, but asserted that it was his privilege to remain out of said Court. Alleged that he did not know what the financial condition of Rondeau & Company was at the time of the execution of the mortgages, but believed they were insolvent. Had acquired his knowledge on that point since their adjudication of bankruptcy; knew nothing of their assets and liabilities. Did not know what Rondeau & Company's intention was in making the mortgages, but believed, from all he has heard, that it was honorable and fair, and without any intention of fraud. Was informed, and believed, that said Kyle had no knowledge of Rondeau & Company's insolvency at the time or before the making of the mortgages. Had no suspicion at the time the papers were transferred to him of any unfairness, and believed then that they were *bona fide* and all right. Would not have bought the papers if he had had any suspicion of a law suit. Admitted that the mortgages were executed within one month before the filing of the petition in bankruptcy, but denied the charge that Kyle had reasonable cause to believe them to be insolvent, etc., and denied any knowledge on his part, of any fraud, etc.

The answer was supported by the affidavit of J. C. Kyle, who deposed that Rondeau & Company and Mrs. A. H. Sells did make and execute the note and mortgages as alleged in the bill to him, on or about the 18th day of February, 1871; that the consideration was $8,000 00, paid then and there to said Rondeau & Company by deponent. Deponent had previously loaned various sums of money to Rondeau & Company, which had all been repaid; that he was satisfied of Rondeau & Company's solvency at the time, and previously, and had no reason to apprehend that they were not so; that he had no fraudulent intent, and believes that Rondeau & Company had none, but that the whole transaction was in entire good faith; that he did transfer them to Paul Jones, Sr., and told said Jones, at and before the transfer, that the note and mortgages were *bona fide*, and that there was not the least foundation for a suspicion of their validity.

The cash book of Rondeau & Company was introduced by complainants and showed an entry of $8,000 00, cash received from J. C. Kyle on the 17th of February, 1871, and that a little over $4,000 00 of that money was drawn out of the firm assets and charged to the individual account of the members of the firm, and nearly all the balance of the $8,000 00 was used in defraying their current expenses, and not in paying their preexisting debts, and none was paid to the complainants in this bill.

Complainants also introduced the return of Rondeau & Company in bankruptcy, sworn to by W. A. O. Rondeau, showing that the indebtedness of the firm at the time of the filing of the petition in bankruptcy was $35,696 82, not including the debt owed to Kyle, and the individual indebtedness of Rondeau, $7,819 80, and showing their assets, not including the property mortgaged to Kyle, and some open accounts stated to have been almost worthless, to be $650 00, and also showing that they owed J. C. Kyle $8,000 00, secured by mortgage.

The Chancellor refused the injunction, and complainants excepted.

D. F. &. W. R. HAMMOND; B. H. HILL & SON, for plaintiffs in error.

1. We think the record shows: 1st. Rondeau & Company's insolvency at the time of the execution of the mortgages, and that they did it in contemplation of bankruptcy and insolvency. 2d. That Kyle, the mortgagee, knew they were insolvent at the time, and had reasonable cause to believe that they were acting in contemplation of bankruptcy and insolvency. 3d. That Kyle had reasonable cause to believe that Rondeau & Company executed these mortgages in order to prevent their property from coming to their assignee in bankruptcy, and to prevent the same from being distributed under the Act, etc. "Reasonable cause means a state of facts or circumstances which would lead any prudent man to make inquiries:" Bump on B., 405, 456; in re Wright, 2 B. R., 155; in re Arnold, 2 B. R., 61; White *vs.* Raftery, 3 B. R., 53; 1 B. R., 146.

2. Complainants have the right as purchasers at assignee's sale to have the mortgages delivered up and canceled if they are void. They have purchased the interests and rights of the creditors of Rondeau & Company: Williams *vs.* Vermeule, 4 Sand. Ch., 388; Seaman *vs.* Stoughton, 3 Barb Ch., 348; Dodge *vs.* Shelton, 6 Hill, 9; Dwinel *vs.* Perley, 32 Maine, 197.

3. The mortgages are void as to creditors: Code, 1942; Fl. *vs.* T., 6 Ga., 110.

4. If they were void, the transfer to Jones could not vitalize them. The assignee of a mortgage takes it subject to all the equities it was subject to in the hands of the mortgagee: 2 Story's Eq. Jur., 1018 (*d*); Guerry *vs.* Perryman, 6 Ga., 123; 12 Mass., 197; 13 Mass., 205; 3 Story's Reports, 365.

E. F. HOGE; R. S. JEFFRIES, for defendants.

### (I.)

1. It was not necessary to prove the note and mortgage in the Bankrupt Court. The State Court has concurrent jurisdiction with the United States Court in this case. The rights of the State Court are not extinguished, inasmuch as the jurisdiction of the United States Court is not exclusive: Jones *vs.* Lellyett, 39 Ga., 64; Bump on Bankruptcy, Ed. 1873, p. 198; Woolfork *vs.* Murray, 44 Ga., 123; Clark *vs.* Benninger, 3 B. R., 129; Clifton *vs.* Foster, 3 B. R., 162; in re Hugh Campbell, American Law Times, volume 1, Bankrupt R., p. 30.

2. The assignee may sell the property of the bankrupt, subject to the lien of a secured creditor. In that case the secured creditor may prove his claim or not, as he chooses: Bump on Bankruptcy, Ed. 1873, p. 85; Gazzam on Bankruptcy, foot note, page 212; in re Sampson *et al.*, 4 B. R., 1.

3. The Bankrupt Act does not prohibit a person from loaning money at legal rates to one whom he has reason to believe to be insolvent, and taking security for such a loan, provided it be made *bona fide*, and without intent to defraud

creditors or defeat Bankrupt Act. This loan was *bona fide.* This mortgagee was not a creditor, nor did he have any claim against Rondeau & Company, nor was he under any liability for Rondeau & Company. It was not contrary to section 35, Bankrupt Act: Darby's Trustees *vs.* Boatman's Savings Bank, American Law Times, volume 4, Bankrupt R., page 117.

4. There is nothing in the Bankrupt Act which forbids security being taken by mortgage, when there is a present passing interest equivalent to the thing secured. Evidence produced in exhibit by plaintiff in error shows that $8,000 00 did pass from Kyle. The evidence shows no intention of fraud on part of mortgagee: Gazzam on Bankruptcy, pp. 81, 98; Section 14 United States Bankrupt Act.

## (II.)

1. Question is at issue between a *bona fide* purchaser of a note and mortgage before maturity, without notice, and purchasers at an assignee's sale, with notice, of the incumbrance. This property was fully administered by judical process from Bankrupt Court. The assignee petitioned to sell, free from incumbrances, but the petition was not granted. The property was ordered to be sold subject to incumbrances, and was so sold, with notice to the world of the incumbrances. The object of selling was to get all over the amount of the incumbrance. The purchaser bought, at the assignee's sale, simply the bankrupt's and general creditors' interest, leaving the lien of secured creditors undisturbed. They are now seeking for an interest never purchased. Seeking to defeat a right which they have acknowledged, Supreme Court must presume that the judgment of Bankrupt Court commanding assignee to sell subject to liens was correct. The assignee has done all that the bankrupt law requires. He has secured the secured creditors by acknowledging their liens, and he has sold surplus to satisfy general creditors. Hence, there has been a complete administration of the bankrupt law. The purchasers are estopped from denying the validity of the liens,

because it was a judgment of the United States Court, that it was subject to incumbrances, and purchasers bought, acknowledging the incumbrances: Rump on Bankruptcy, edition 1873, p. 150.

2. Paul Jones is a *bona fide* transferee before maturity, and without notice, and is, for that reason, protected: Irwin's Revised Code, section 2743; Beall *vs.* Harrold, N. B. Register, volume 7, page 400.

3d. The procurement by fraud must be brought home to the tranferee in order to render the note and mortgage void. There is no evidence going to show that Paul Jones participated in the fraud. Fraud in the procurement, as specified in the Georgia Code, means fraud in the procurement by holder thereof: Roberson *vs.* Vason, 37 Ga., 66.

4th. The debt or note of the debtor is the principal, the mortgage is the collateral, or incident. Transferee having the note, necessarily carries the mortgage and rights thereto: Roberts *vs.* Mansfield, 32 Ga., 228; Welborn *vs.* Williams, 9 *Ibid.*, 86; Jervis *vs.* Smith, Nat. B. R., vol. 3, p. 147; Bump on Bankruptcy, edition 1873, page 433.

5th. There is no evidence in this bill showing that Paul Jones is not a *bona fide* transferee, except the affidavit of Hammond, (the plaintiff's attorney,) founded on the information of others. His evidence is insufficient. The allegation must be direct and positive before an injunction can be granted: Jones *vs.* M. & B. R. R. 39 Ga., 138 ; Irwin's Revised Code, 3037.

McCay, Judge.

1. We are not prepared to say that the purchaser at the assignee's sale cannot set up that the mortgage is fraudulent. True, there are cases that way: 34 New Hampshire, 102; 98 Massachusetts, 305; 32 Maine, 197. But there are cases *contra*: Williams *vs.* Varnneli, 4 Sand's (N. Y.) Chancery, 388; Seaman *vs.* Slaughton, 3 Barbour Chan. R., 348; Dodge *vs.* Shelton, 6 Hill, 9.

On principle, it would seem that the right of the purchaser

turns on whether the assignee has *affirmed* the sale or mort-gage. Without question, if he has done this, the purchaser would be estopped. The assignee may unquestionably affirm the fraud. That is, he may say "true the deed or mortgage is a fraud on the law, but if the vendee will pay the money to me I will let the *sale stand*." And the real question, in principle, would be, has the assignee done this in fact? Or has he done it in effect by so acting as to induce the pur-chaser at *his sale* to suppose that he has affirmed the sale or mortgage, by the bankrupt? We do not think this is done by the simple sale, under an order to sell subject *to incum-brances* generally. The deed, in 98 Massachusetts, definitely mentioned the specific mortgages, and the land was sold sub-ject to them. Here is no specification. The order is to sell subject to incumbrances. What incumbrances? Any that anybody may have, legal or illegal, void or not void, fraudu-lent or not fraudulent? This seems to us absurd. The or-der of the register to sell subject to incumbrances must be taken to mean subject to legal incumbrances. It is not at all in the nature of a judgment that any particular incumbrance is a valid one, and, in our judgment, it is giving it a very im-proper scope to say so. The purchaser buys the title of the assignee. He is the agent of both the bankrupt and the creditors, and we think the purchaser buys all their *rights.* If they have intentionally and for a consideration, affirmed the mortgage, as a matter of course, they, having no further rights, the purchaser would get no rights to attack it. But it seems to us that a mere failure, perhaps because they did not know of the fraud, to attack it, is no affirmance.

2. But, we think the facts in this record show that Jones is an innocent purchaser. There is no *proof* that he is not, and his answer is positive. As to the fact, therefore, we think the Judge was bound so to think; nor is there *constructive notice.* Jones was no party to the proceedings in bankruptcy, nor was this mortgage in question there. The creditors might have attacked it, or Kyle might have proven his debt. It appears that he did not. At any rate, this land was sold be-

fore Jones purchased. Even the right to attack it in *bank-ruptcy* had passed away and been dismissed before Jones purchased. There was, at *the time,* no *lis pendens* involving the validity of the mortgage. That question had been turned over to the purchaser, so that Jones bought without notice, express or constructive. But it is said this mortgage, if in violation of the bankrupt law, is void for fraud. All fraudulent deeds and acts are void. But nothing is better settled than that this kind of fraud cannot be set up against an innocent purchaser, one who does not know of the fraud: Irwin's Revised Code, 1942; 8 *Georgia,* 274, 7 *Ibid.,* 534; Bond *vs.* Harrold, N. B. Register, vol. 7, page 100; Irwin's Revised Code, 2743; 37 *Georgia,* 66. Nor is it true that the assignee of a mortgage is always open to the equities between the parties. This is true of all choses in action, except negotiable securities: Revised Code, section 2218. But under our law, "all bonds, specialties, or other contract in writing for the payment of money, or any article of property, are negotiable by indorsement or written assignment:" Revised Code, section 2734. True, a mortgage is not exactly "for the payment of money;" but it is not a title. In this State it is only a "*security for a debt.*" It is generally to the mortgagee and his *assigns,* and as this Court has held, more than once, the transfer of the note, with nothing more, passes the mortgage: 32 *Georgia,* 228, 9 *Ibid,* 86. But in this case there was a special assignment. We think, for these reasons, the Court was right in refusing the injunction.

Judgment affirmed.