Williamson v. Mimms.

WILLIAMSON v. MIMMS.

1.  OVERDUE TAX LAW:  *Fraud in proceedings under.*

   Where the owner of lands had actual notice of proceedings to condemn them
   to sale for the non-payment of taxes under the overdue tax act, and failed
   to avail himself of the defense of payment, he cannot afterwards in an action
   of ejectment brought by the purchaser at the tax sale, establish fraud in the tax
   proceedings by evidence which merely goes to prove that the taxes had been
   paid.

2.  SAME:  *Decree under, conclusive as to non-payment of taxes.*

   Where lands were sold under the overdue tax law, the decree of the Chancery
   Court that the taxes, for the non-payment of which the sale was made, had not
   been paid, is conclusive upon the defendant in an action of ejectment brought
   by the purchaser at the tax sale.

3.  ESTOPPEL:  *Relation of parties: Representations and promises.*

   M., as administrator, sold certain lands of his intestate, under an order of the
   Probate Court, and they were purchased by the defendants, to whom M. con-
   veyed the lands by an ordinary administrator's deed without covenant.  After
   the estate was settled, M. acted as the agent of the defendants in collecting
   rents and paying taxes, and while he was so acting, proceedings were com-
   menced under the overdue tax law, to sell the lands for back taxes, assessed for
   years prior to M.'s administration.  After M.'s agency had ceased and he had
   been succeeded by A., the lands were sold to the State under a decree rendered
   in the tax proceeding.  A. knew of the tax proceeding and sale, but failed to
   redeem the lands and they were purchased from the State by M. and others
   who brought ejectment to recover them.  *Held:*  That M. was not estopped to
   claim title to the lands by any relation he had sustained to the defendants, nor,
   if, proved, by his acts and conduct towards A. during the latter's agency and
   before the sale, in stating to him that the taxes had been paid, undertaking to
   produce the receipts, advising A. not to pay the taxes, and promising to adjust
   the matter without trouble to A.

Williamson v. Mimms.

4. ASSESSMENTS: *Under over-due tax act.*

In proceedings under the overdue tax law, where lands had escaped taxation in former years, and the court ordered them to be assessed for the purpose of levying taxes, an assessment not made according to the value of the lands during the years for which the taxes were unpaid, or the levy by the court of taxes at a rate different from that provided for by the revenue law in force during those years, would be in violation of the constitutional provision which requires taxes to be equal and uniform (*art. 16, sec. 5*). But where it does not appear from the record that the value put upon the lands was not their value during the years for which the taxes were not paid, nor that the rate of taxation was different from that levied on all other values in those years, this court, in the absence of proof to the contrary, will presume that the back taxes assessed upon the lands by the Chancery Court, were the same which the owners would have had to pay if the lands had not escaped assessment.

APPEAL from *Little River* Circuit Court in Chancery. H. B. STUART, Judge.

*O. D. Scott* and *Compton & Compton* for appellants.

1. Plaintiffs are estopped by the acts and declarations of Mimms. Defendants purchased relying on these statements and declarations that these lands were free from all incumbrances, and that the taxes had all been paid. *3 Hill, 215; Herman on Estoppel, sec. 323; 25 How. Pr., 203; 47 Barb., 206; 14 Mo., 482; 16 id., 273; 37 id., 213; 39 id., 229; 44 id., 247; 57 id., 384; 14 Phila., 2; 10 Pa. St., 527; 38 Iowa, 654.*

2. The statements and acts of Mimms and his declarations to Allen, work an estoppel. See authorities *supra. 50 N. Y., 575; 117 U. S., 96; 66 N. Y., 113; 1; Wend., 308.*

3. The taxes for which the lands were sold had been paid.

4. Part of the lands not being mentioned in the complaint or order, were not proceeded against, and the court acquired no jurisdiction as to them, this being a proceeding *in rem*, and there being no personal appearance or service. *1 Hill (N. Y.), 130; 2 How. (U. S.), 43; 2 B. Mon., 453; 6 How. (Miss.), 106; 4 Blackf., 169.*

22

*Jones & Martin* and *John B. Jones* for appellees.

The proceeding under the "overdue tax act" was a proceeding *in rem*. The lands owed the taxes. *18 Wall., 162; 3 Wheat., 319; 18 How., 137; 21 How., 333; 5 Ark., 425; 42 Ark., 344.*

The decree of the Little River Circuit Court, a court of superior jurisdiction, cannot be attacked collaterally in this proceeding. The only remedy is by appeal or by some direct proceeding. *11 Ark., 519; 28 Fed. Rep., 867; 21 id., 367; 47 Ark., 419.*

The decree in the overdue tax case settled the question as to the payment of the taxes. *5 Wall., 306; 37 N. Y., 74; 3 Wheat., 319.*

2. Before an estoppel by parol can affect the title to land, a fraudulent intent must be shown. *Malone R. P. Trials, 373–4–5; 26 Cal., 23.* There is no pretence that Mimms knew of any claim of back taxes when the contract was executed. As to what is necessary to constitute an estoppel, see *Bigelow Est., 552; McLain, Adm'r., v. Buliner, 49 Ark., 218.*

The deed from Mimms as administrator contained no warranty. It conveyed only such interest as the estate had. He stood in no relation of trust at the time these lands were sold. Their agent was aware of all the proceedings and had the money in his hands to redeem the lands or pay the taxes.

CLARK, Sp. J. This was an action of ejectment brought in the Little River Circuit Court by Andrew J. Mimms, A. R. Moores and W. P. Feazel against J. L. Williamson, George Williamson and J. C. Williamson, all of whom were non-residents of the State, for the recovery of the following lands : East half southwest quarter section 29, north half northeast quarter section 31, and east half northwest quarter 32, all in

Williamson v. Mimms.

township 13 south, range 29 west, in Little River county. Complaint was filed on December 24, 1884. The claim of the title set out was a deed to the lands by State Land Commissioner Cobbs, dated 26th November the same year, founded upon and reciting a decree of the Chancery Court of said county, made on the 18th day of March, 1882, under the act of March 12, 1881, known as the "Overdue Tax Law," under which decree these lands with a large amount of other lands were condemned to sale for the non-payment of back taxes, and sold to the State on the 8th day of November, 1882, for the amount of taxes so adjudged against them; the east half southwest 29, for taxes of the years 1868-9-70-71 and '72; the north half northeast 31, for the years 1869-70-71-72--73-74 and '75, and the east half northwest 32 for the years 1869-70-71 and '72.

The defendants, the Williamsons, appeared and put in an answer and cross-complaint setting up certain supposed equitable defences, and upon their motion the case was transferred to the equity docket, and upon motion of the plaintiffs a receiver was appointed with directions to take possession of the lands and collect the rents for 1885, and rent the same out for the year 1886 to the highest bidder.

From the pleadings and evidence in the record, the following facts appear:

Ben E. Williamson, who was a brother of these defendants, died intestate during the war, owning these lands with other lands constituting a plantation of about 1000 acres. He died indebted to his brothers, the present defendants, for $7000 borrowed money with some accrued interest, which debt became a claim against the estate. Thomas M. McCrary married the widow, and letters of administration d. b. n. were granted to him in June, 1886, and he continued to administer until 1876, when he resigned, and then or shortly afterwards, letters d. b. n. were granted to A. J. Mimms, one of the present plaintiffs, whose wife was a daughter of the intestate and an heir of his

estate, and he continued to administer until the estate was wound up in 1881. The wife of the plaintiff, Moores, was also a daughter of the intestate and an heir of the estate.

It seems that there was some trouble among the parties about the claim of the Williamsons, but on the 4th of September, 1880, they obtained a final judgment against the administrator, Mimms, in the Sevier County Circuit Court, on appeal from the Probate Court (the claim having been filed before the new county of Little River had been formed) for upwards of $15,000. This judgment being filed and classed in the Probate Court, the parties came together and entered into a compromise which was drawn up and signed and sealed by the defendants, Williamson, by the administrator, Mimms, and by McCrary and wife. By this compromise the Williamsons were to take a clear and unencumbered title to the plantation of about 1000 acres (including the lands in controversy) with an assignment of the widow's dower, for their debt—the estate to pay all attorney fees and all costs, and the agreement to be sanctioned by the Probate Court. And to consummate a title in accordance therewith a petition was to be filed by the administrator and an order of the Probate Court to be obtained in the ordinary form for the sale of the lands; all of which was carried out as agreed, and at the sale, which was made on the 18th day of July, 1881, the defendants purchased the lands at the sum of $8000, and a deed to them by the administrator was duly confirmed by the court. They executed an acquittance for the whole judgment and went into possession of the lands and remained in possession by their tenants until after the commencement of this suit.

No issue is raised as to the legality of these proceedings, or the Williamsons' title created thereby, but the articles of compromise and the administrator's deed, as well as most of the other facts in the case, must necessarily be brought into view upon the defendant's plea of equitable estoppel.

Williamson v. Mimms.

It will be seen that the overdue taxes for which the lands were forfeited to the State were for the years prior to this purchase and during the administration of McCrary. And in connection with the defence of a legal estoppel, it is alleged and satisfactorily proven that after the purchase of the Williamsons, they employed the plaintiff, Mimms, as their agent in this State to take charge of the lands and collect rents, pay taxes, etc., and that Mimms did act as such agent until some time in the year 1882 when he ceased to be their agent, and one John R. Allen was appointed and acted as such until after the lands in controversy had been condemned and sold to the State and the time for redemption had expired. In that suit the County Court, it seems, employed one Head, an attorney, and Feazel, one of the plaintiffs herein, who was also an attorney and had been the attorney for Mimms in the settlement of the Williamson estate and was familiar with all the proceedings therein, to hunt all the lands in the county subject to be proceeded against for non-payment of taxes under the said act, to furnish a list thereof and to prosecute the suit through the Chancery Court for the recovery of such unpaid taxes. A list of the lands was made out with the help of R. S. Chaytor, the Circuit Clerk, and their petition was filed sometime in the spring of 1882.

The record entries in the tax suit are exhibited and made a part of the record in this case, and it appears that on the day of the filing, the court made an order as provided in the statute requiring all persons having any interest, etc., to show cause within forty days why a lien should not be declared on the lands for unpaid taxes, and why said lands should not be sold for non-payment thereof. The order was posted at the court house door only, there being no newspaper published in the county. At the end of forty days, there being no appearence, the complaint was taken as confessed, the lands condemned to the payment of back taxes, and expressly because the lands had not been assessed or put upon the tax books for the said years

the court ordered an assessment and valuation of the lands to be.made *now for then* by the County Assessor. And the Assessor subsequently returned his list of the lands with the value annexed of $160 for each forty acres. Upon this valuation the court levied and extended the various State, county and school taxes, upon each forty acres, for all the delinquent years in the aggregate, and not for each year separately, together with eighty cents fees to the Clerk, and two dollars and fifty cents for attorney's fee, amounting to forty-two dollars and thirty-five cents upon each forty-acre tract, and for all the tracts $254.10; and the court decreed the lands to be sold at the court-house door on the 8th day of November in that year, unless the said taxes and costs should be paid within twenty days of such decree, and the said Clerk, R. S. Chaytor, was appointed commissioner to sell the same. The lands were sold on that day and, as no one bid, they were struck off to the State for the taxes and costs.

The dates of the several orders do not appear in the record except the time of filing the petition and the sale of the lands.

It will be seen that these proceedings were going on while Mimms was agent for the owners of the lands, but the sale did not take place until he had ceased to be agent and Allen had taken his place. Sometime before the sale, Allen having learned of these proceedings from the Clerk, Chaytor, called upon Mimms, at his store, to inquire about the matter, when certain conversations were had and statements made by Mimms, and then the parties went to the Clerk's office where other statements were made in the presence of Chaytor, the Clerk; and upon these statements, with others to the same effect, the defendants rely as working, together with other circumstances, an equitable estoppel, as we have before stated, upon the plaintiffs to claim the lands.

The evidence of these statements is greatly conflicting. Allen in his testimony says, when he called on Mimms he man-

ifested great surprise at such proceedings, or rather that any of the Williamson lands should be involved, and assuring him that the taxes had been paid, advised him not to pay them, and that he, Mimms, would get the tax receipts and make a showing that the back taxes had been paid. He stated that he had the receipts, that the forfeiture was a mistake, that he would fix it up, and that Allen need give himself no more trouble about it. That knowing that Mimms had been acting as agent for defendants, and was of kin to them, and had administered upon the estate, and had sold the lands to them, he put the utmost confidence in the statements, and feeling secure that the taxes had been paid and that there would be no danger, he omitted to pay the taxes or to redeem the lands after the sale, although he had retained out of the rents of the place $300 to pay if necessary. Mimms in his testimony admits that he had conversations with said Allen at the times stated, and that he told him that he thought that the taxes had been paid; that he did not know that any of the Williamson lands were contained in the advertisement, and did advise him not to pay the taxes levied by the court until he, Mimms, could investigate the matter and see if the receipts could not be found; that probably McCrary had the receipts (McCrary had previously moved to North Carolina), but he denies that he ever told Allen that he had the receipts, or that he would fix up the matter, or that he, Allen, need not give himself any urther trouble, and alleges that he did investigate the matter and did inform Allen before the sale that he could find nothing to show that the back taxes had been paid.

It is in evidence that the Williamsons knew nothing in fact about these tax proceedings, nor the sale of their lands until after the time for redemption had run out and this suit had been commenced; although sometime after the sale, in the year 1883, Allen wrote to George Williamson stating that there was some trouble about back taxes on the lands, and that he

had retained out of the rents of 1882, $300 to meet such back taxes *in case he had them to pay*, and that he would pay them *before the time expired, if necessary*. This money was in the hands of Allen when the time ran out. Another fact is that in August or September, 1884, before the time for redemption had expired, George Williamson inquired of A. R. Moores, one of the plaintiffs, then on a visit to North Carolina, for information as to the back taxes on their lands; that Moores evaded the question in such manner as not to inform him of the tax proceedings or that his land had been sold.

It appears, too, that all the records of the court were burned in the burning of the court house in February, 1883, including the settlements and other proceedings in the matter of the administration of Ben E. Williamson's estate. It is further proved that before the expiration of the time for redemption of the lands, the plaintiffs entered into an agreement with each other to buy the lands in case they were not redeemed, the said Mimms and Moores to furnish the money, each to own one-third; Feazel was to have one-third in consideration of his services in any suit which might be necessary to recover possession and the payment of the costs of such suit.

Upon this state of facts the Chancellor decreed the title of the plaintiffs to the land to be good; that they recover possession with rents from the time of the purchase from the State, and that the defendants answer and cross complaint be dismissed for want of equity.

The appellants contend that this decree should be reversed, because :

1. The act under which the tax proceedings were had is unconstitutional and void to the extent of its assumed power to levy and impose taxes upon lands upon *nunc pro tunc* assessments. Because:

2.  The tax proceedings were void as fraudulent, the taxes having been regularly paid, and the plaintiffs were instrumental in procuring the decree of condemnation, well knowing their allegations that the lands had not been assessed and that the taxes had not been paid were false. Because:

3.  They were estopped from claiming the lands because of their purchase of the lands of the said Mimms as administrator with assurance that there were no taxes unpaid or no other incumbrances at the time of the purchase, and because the defendants were induced by the false statements and fraudulent acts of the defendant to forego the payment of the taxes assessed by the Chancery Court, or to redeem the property within the time prescribed by law. Because:

4.  The pretended taxes levied upon the lands by the Chancery Court was a gross sum or a percentage on each forty acres for all the years from 1868 to 1875, paying no attention to the different percentages levied in those years on all property.

On the other hand it is contended by the appellees that the tax proceeding was a proceeding *in rem* against the property; that notice was given as provided in the act; and being a superior court of general jurisdiction, its proceedings cannot be reviewed by this court in this action. And this is conceded to be true. Those proceedings could only be reviewed here on appeal, or under some direct process for that purpose. But the plaintiffs' title vests upon the decree and sale of the lands in that case, and the validity of their title is in direct issue in this case. They must recover upon the strength of their title. Whether the proceedings and decree in that case were valid or void in their effect to sustain the plaintiffs' title, is, therefore, a necessary inquiry here. They may be void for unconstitutionality, or for having been procured by fraud, accident or mistake, and if such should prove to be the case, it would be the duty of this court so to declare.

Williamson v. Mimms.

**1. OVERDUE TAX LAW:** Fraud in proceedings under. As to the question of fraud, accident or mistake, we might as well dispose of it at once. We find nothing in the record to justify such a conclusion. It is insisted that all the evidence in the case which goes to prove that the taxes had been paid is evidence to make the proceedings fraudulent. But the question whether the taxes had been assessed and paid was directly in issue in those proceedings, and the defendants, during all the time, had their agents here, who knew of the proceedings in ample time to put in the defence of payment, and they did not do so.

Moreover, their agent, Allen, was told before the sale by Chaytor, the Clerk, who was an active agent of the county in those proceedings, that if he would produce the receipts, or show that the taxes had been paid, he would have the lands stricken from the list of lands being proceeded against. Now, notice to the agent is notice to the principal, and the defendants must be held bound by the failures of duty on the part of their agents, as well as their other acts. If they failed to avail themselves of the fact of payment, if such fact existed and would otherwise be evidence of fraud, at the time, we think they can hardly be permitted now to charge it as evidence of fraud in the proceedings.

**2. SAME:** Decree under, conclusive as to non-payment of taxes. As to the fact of payment of the taxes being in itself a defence to the action, we think it was not available, as such, to defendants, and evidence to prove the fact was wholly inadmissible. The decree of that court that the taxes had not been paid, is conclusive upon the court and parties in this case. It was a question proper for that court to decide and the decision, if erroneous, could be corrected only upon a rehearing in that court or upon appeal of the proceedings to this court.

**3. ESTOPPEL:** Relation of parties, promises, etc. In the next place it is insisted that the plaintiffs are estopped from claiming or asserting title to the lands and that they hold them in trust for the defendants.

Williamson v. Mimms.

There is much evidence as to the relation of the parties and their dealings together, as·well as their acts, conduct and statements towards and with each other in regard to the lands, but we are at a loss to discover anything in them to bring the case within the familiar principles of estoppel, either legal or equitable, or to convert the plaintiffs' purchase or holding of the lands into a trust for the defendants. Neither of the plaintiffs at the time of the sale of the lands to the State, or at the time of their purchase from the Land Commissioner, occupied any fiduciary relationship to the defendants or either of them. Mimms, it is true, had been administrator and, as such, had sold and conveyed the lands, under the·orders of the Probate Court, to the defendants.

Like all administrator's deeds of conveyance, it contained no covenants and conveyed only such title as the estate had at the time of the sale. It is a well settled principle that a purchaser of lands without covenants·is remediless against the vendor as to outstanding incumbrances. By the express terms of the deed the defendants took the lands subject to the State's right, whatever that was, for back taxes; but they allege that they took them upon the assurance of the administrator that all taxes had been paid, and would not have taken them otherwise. This assurance was verbal merely and created no legal obligation.

Mimms, no doubt, could have bound himself in a personal obligation against any back taxes; but he could do so only by covenants in the deed. The defendants did not see fit to require this.

Moreover, such assurance was not the cause of their losing the lands; it was their duty to pay the back taxes, nevertheless, and not let the lands be sold. Admitting the estoppel, it would extend only to making good the back taxes, and not in any way to prevent him from subsequently acquiring title to the lands to himself personally; for an estoppel *in pais* will

always be strictly limited to the representation made. *Bigelow on Estoppel, 451; Murray v. Jones, 50 Ga., 109; Tilton v. Nelson, 27 Barb., 595.*

Nor is there anything in the statement of Mimms to Allen, the agent before the sale, to the effect that the taxes had been paid, or his undertaking to produce the receipts, or his advice not to pay the taxes, or his promise to fix the matter up without trouble to Allen, for, if ever so true, it comprised nothing upon which Allen could justify his not paying the taxes or redeeming the lands. He had abundant warning afterwards, in time to have prevented the sacrifice, that the taxes had not been paid. He knew of the proceedings going on in court for the sale of the lands; and if he did not attend to it he cannot, we think, claim that such failure was due to such statements or promises of Mimms. It is claimed that Mimms and the other plaintiffs, in consequence of their connection and business relationship with the defendants in respect to these lands, were under obligation to inform them of such tax proceedings in time to enable them to prevent the sale or to redeem the lands; but such duty on their part, had it otherwise existed, could have no application when it was known that they had their agent there attending to their business. They had a right to presume, and did, no doubt, presume that their agent, Allen, had kept them fully informed of all those matters.

The constitutionality of the law under which these proceedings took place, in its application to back taxes upon lands which had never been assessed or put upon the tax books, seems to be involved and presents a more serious difficulty. A law is not unconstitutional when there is any method by which it can be carried into effect so as not to infringe upon the Constitution. The law provides that "the court shall determine the amount of taxes of the various kinds that are due upon the lands, and to [by] whom payable, and decree payment accordingly; and *where, for any reason, any of the lands*

Williamson v. Mimms.

*have been omitted from the assessment lists, or any assessment made is invalid, the court shall make an order requiring the Assessor of the county to assess the lands for the years during which it shall appear that the taxes were not paid thereon."*

There is no subject upon which the Legislature has a broader or more extensive power than that of taxation. Indeed, it is laid down by all authorities that this power has no limit except in the express provisions of the Constitution and the declared ends of government. See *Cooley on Taxation, 3, 4; Blackwell on Tax Titles, pp. 2, 3 and 8; 1 Desty on Taxation, pp. 88–9.*

Our Constitution has limited the power, however, by the following provisions: "That all property subject to taxation shall be taxed according to its value, making the same equal and uniform throughout the State," (*art. 16, sec. 4,*) and "That no tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same."

The same provisions are contained in some form in the Constitutions of most if not all the other States. There is no dearth of authorities as to their construction. It is manifest that in all processes to raise revenue by taxation the State must conform to those limitations, and she can confer no power upon the Chancery Court or any other agency to disregard them. All our revenue laws are formed with a view to them; and to obtain revenue for the support of the government in any year she must have a law in existence specifying the object of the tax. It must be based upon the value of the property, and, therefore, to make it equal and uniform throughout the State, it must provide for a listing and valuation of all the property of the State. It is plain, therefore, that the two essential steps in all taxation—the valuation and the rate of taxation in any year, must be the same in relation to all the citizens throughout the taxing district. One class of citizens cannot be made to pay by one rule and another by another,

and that whether the taxes are paid during the year or years afterwards.

**4. ASSESSMENTS:** In all annual taxation the taxes of the several years are **Under overdue tax act.** independent of each other, and when the taxes under the law are levied in any one year the rate of taxation is determined and the indebtedness of all the property holders is fixed for that year, and cannot be changed by any new legislation after the year is past without a plain violation of the constitutional limitations. *1 Desty Tax., pp. 460, 175; N. C. R. R. v. Alamance, County, 77 N. C., 4; Johnston v. Royster, 88 N. C., 194; Peirce v. Weare, 41 Iowa, 378; Lebanon v. O. & M. R. Co., 77 Ill , 539; New Orleans v. Davidson, 30 La. Ann., 555; Weeks v. Milwaukee, 10 Wis., 242; Knowlton v. Superv's, 9 Wis., 410.*

In the case of the *St. L., I. M. & S. Ry. Co. v. Keith, 47 Ark., 323,* this court held that it was competent for the Legislature, as in the overdue tax act of March 12, 1881, to provide for the assessment, by a court of equity, of lands which had escaped assessment in former years, and to charge the lands with the cost of the assessment.

It was not intended to decide in that case that the court might put an arbitrary value upon the property to be listed; or to levy an arbitrary percentage of tax upon such value, independent of the revenue law in force during the years for which the lands so escaped taxation and the amounts levied on all other values in those years. Such an assessment would not be taxation, but would be in the nature of a penalty upon the owner for not paying the taxes. If such were the actions of the Chancery Court in that case its proceedings were void, and it was competent for the defendants to allege and prove that fact as a defense to this suit. But are we warranted in concluding from anything in this record that such was its action? The years for which the court decreed payment of the taxes were for the five years from 1868 to 1872 inclusive. The

Williamson v. Mimms.

order to the Assessor was in the language of the act to assess the lands *for the years named.*

The Assessor made his report but it has not been made a part of the record. If he assessed a present value upon the lands, or any other than their value during the years which their taxes were so unpaid, it does not appear in the record, nor is there anything to show that the rate of taxation was not the same as was levied on all other lands under the revenue laws of 1868-9, in accordance with which all other taxes were levied in those years.

The decree does not set out the rate of taxation in those years, but to the value of each tract of forty acres so assessed it annexes an aggregate sum as the taxes of such years, and there is nothing to show how this aggregate was obtained— whether it was an arbitrary sum or whether it was the sum of the rates actually levied in those years taken from the tax books. In other words, the records do not show that the value put upon the lands was not their value during the years for which the taxes were not paid, nor that the rate of taxation was different from that levied upon all other values during those years. And in the absence of evidence to prove the contrary we must presume that the Chancery Court put that construction upon the law which was in accord with those constitutional guaranties, and that the back taxes which they assessed upon the lands were essentially the same in amount as the owners would have had to pay if the lands had not escaped assessment.

Affirmed.

BATTLE, J., did not sit in this case.