# CHARLESTON.

GILMORE MANUFACTURING CO. *v.* COMYN LEWIS

(No. 6009)

Submitted January 24, 1928. Decided January 31, 1928.

1. CORPORATIONS—*Corporation May Avoid Sale of Property Pursuant to Judgment and Decree in Favor of Officer, Not Acting in Good Faith, Who Also Purchased.*

   Where the conduct of a stockholder, director, officer and general manager of a corporation in obtaining judgment at law and a decree in chancery to sell the company's property, and the purchase thereof by himself in satisfaction of his judgment evinces want of good faith, the company may. elect to avoid the sale and recover the property for the benefit of all the stockholders and directors.   (p. 109.)

   (Corporations, 14a C. J. § 1881.)

2. SAME—*Corporation's Officer Has Burden to Show Good Faith and Adequacy of Price in Sale to Him of Corporation's Property Pursuant to Judgment and Decree; Sale to Corporation's Officer, Pursuant to Judgment and Decree, of Corporation's Property, Will be Closely Scrutinized.*

   When such a sale and purchase of the corporate property by an officer, director and general manager of a corporation is attacked for want of good faith on his part, and for inadequacy of price, the burden is on the purchaser of clearly showing fairness and good faith on his part, and his transactions will be subject to the closest scrutiny.   (p. 109.)

   (Corporations, 14a C. J. § 1881.)

3. SAME—*Gross Inadequacy of Price is Sufficient to Set Aside Judicial Sale of Corporation's Property to Its Officer, Unless Overcome by Other Evidence; Inadequacy of Price Held to Justify Setting Aside Sale of Corporation's Property to Officer.*

   Gross inadequacy of price for the property, alleged and proven, will constitute strong evidence of unfairness and be sufficient to set aside the sale unless sufficiently overcome by other evidence in the cause.   (p. 110.)

   (Corporations, 14a C. J. § 1881.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Kanawha County.

Suit by the Gilmore Manufacturing Company against Comyn Lewis. From a decree setting aside a judgment for defendant, and annulling several decrees in his suit against plaintiff to subject plaintiff's real property to satisfaction of the judgment, defendant appeals.

*Affirmed.*

*Henry S. Cato*, for appellant.
*Price, Smith & Spilman*, for appellee.

MILLER, PRESIDENT:

From a decree of the circuit court of Kanawha County, setting aside and rendering null and void a judgment of the common pleas court of said county in favor of the defendant herein, and setting aside and annulling the several decrees and orders in his suit against the plaintiff in this case, prosecuted in the said circuit court, to subject the real property of the Gilmore Manufacturing Company to the satisfaction of said judgment, the defendant Lewis prosecutes the present appeal.

The bill in the present suit alleges that the plaintiff, the Gilmore Manufacturing Company, was organized in January, 1920, for the purpose of manufacturing convertible automobile bodies to be attached to Ford roadsters, under a patent owned by it; that the defendant Lewis was elected a director, secretary, and general manager of the company on September 14, 1920, and treasurer of the company on May 30, 1921, and since that time has had exclusive control of all the company's business, management, books, records, funds and the property owned by it; that on September 14, 1920, the company agreed to purchase from defendant a tract of land, together with all the buildings and machinery located thereon, to be used by it in the business for which it was organized, for the consideration of $8,000.00, of which $3,000.00 was to be paid in cash, and for the balance of the purchase price defendant was to receive stock of the plaintiff company in the amount of $5,000.00; that said agreement was carried into effect when defendant deeded to the company the property contracted for; that during the latter part of the year 1920

or the first of 1921, the company began the manufacture of automobile bodies under the exclusive control and management of defendant Lewis; that such operation continued for about two months, during which time about fifty of such bodies were completed, after which time at the direction of the defendant the company ceased to operate, because the product could not be marketed; that defendant Lewis, as secretary of the company, called a meeting of the stockholders for May 30, 1921, at which time a resolution was passed authorizing the board of directors to sell the assets of the company, pay up its debts and distribute any balance of money remaining among the stockholders; that at said meeting the following directors were elected: U. G. Thomas, J. M. Cavendish, S. T. Nutter, Comyn Lewis and S. P. Campbell; that immediately thereafter, at a meeting of said board, S. P. Campbell was elected president of said meeting, and that defendant Lewis was elected treasurer of the company; that the board, pursuant to the resolution of the stockholders, sold its patent rights for the price of $8,600.00.

Plaintiff further alleges that on the 15th day of September, 1921, the defendant Lewis instituted an action at law by notice of motion for judgment against the plaintiff in the common pleas court of Kanawha County, for salary from September 1, 1920, to September 1, 1921, at $200.00 per month, and on October 8, 1921, obtained a default judgment in the sum of $2,412.40; that execution issued on this judgment on February 28, 1922, was returned by the sheriff March 4, 1922, with the notation "No property found;" that on the same day, the defendant instituted a suit in chancery against plaintiff, praying for the sale of its property to satisfy his judgment; that a decree *pro confesso* was rendered against the company ordering a sale of the property proceeded against; that said property was sold by Henry S. Cato, special commissioner, and purchased by the defendant Lewis for the price of $3,100.00, of which the sum of $2,537.97, was paid to Lewis in satisfaction of his judgment; $251.50 as costs in the suit, including $180.00 to Cato as commission, and the balance of $310.53 turned over to Lewis as treasurer

and general manager of the company, of which he deposited
$307.03 in bank to the credit of the company, but that plain-
tiff. does not know what became of such balance; that the
property sold was worth at the time of said sale, at least
$10,000.00.

It is further alleged that the notice of motion for judgment
was served on J. E. Campbell, the statutory attorney desig-
nated by plaintiff; that said Campbell forwarded the copy
of the notice left with him to S. P. Campbell, the president of
the plaintiff company; that J. E. Campbell had been retained
by the company as its general counsel, but unknown to any
of the other officers or directors had been discharged by the
defendant Lewis a short time before the notice of motion was
served; that the said S. P. Campbell relying on the company's
counsel to make defense, and not understanding the legal
import of the notice, made no effort to defend the action; and
that none of the officers or directors of the company, with
the exception of Lewis, had any knowledge of the proceedings
had in either the court of common pleas or the circuit court,
until December 28, 1922, when Lewis informed director U. G.
Thomas that the property had been sold; that Thomas imme-
diately informed the other directors, who authorized the pres-
ident to institute the present suit, which was done within three
months thereafter.

It is alleged that at the time the execution issued out of the
court of common pleas was returned with the notation, ''No
property found,'' defendant Lewis, as treasurer and general
manager of the company had in his custody and control money
and property of the company sufficient to have satisfied the
judgment against it, but that with the intent of fraudulently
and secretly obtaining the property of plaintiff, he proceeded
with his suit in the circuit court, which was instituted on
the day the sheriff's return was made, unsatisfied, and em-
ployed Henry S. Cato to represent him therein.

By his answer defendant admits that he sold to the plain-
tiff company the property as alleged in the bill and that from
the beginning he was a director, and the general manager
and secretary, and later treasurer, with control of the com-

pany's business management, books, records, funds and prop-
erty, but says that he was at all'times subject to the action
and supervision of the board of directors. He admits bring-
ing the action at law and the suit for the satisfaction of his
judgment against the company, and the purchase of its prop-
erty at the judicial sale, but denies that any irregularities
therein were committed by him. He denies making any false
statements in connection with said suits, or that they were
instituted and prosecuted with fraudulent intent, and denies
that the property purchased by him was worth more than the
price paid. He denies that at the time his execution was re-
turned unsatisfied there was personal property or money suffi-
cient in his control to pay the same, and says that while the
machinery and equipment in the plant might have been car-
ried on the company's books at the sum of $1,746.63, as a
matter of fact it consisted of engines, boilers, pulleys, etc.,
attached to the building, and was part of the realty, not sub-
ject to his attachment. He admits that at the time the com-
pany had on hands some thirty automobile bodies, with some
tools and supplies, but that they were not worth as a whole to
exceed $30.00. He admits that a short time before the ser-
vice of his notice of motion against plaintiff, he dispensed
with the services of J. E. Campbell as general counsel for
the company, because the company had taken action to dis-
pose of all its property and had no income, or assets of con-
sequence except its real estate, and no longer required the
services of a general counsel. He says he had no informa-
tion as to what disposition J. E. Campbell made of the notice
of motion and process in his suits, nor whether or not S. P.
Campbell or any of the other officers or directors knew of
the suits and proceedings had therein until after sale of the
property; and avers that after the closing down of the plant
and the sale of the company's patent rights, none of the offi-
cers or directors appeared to take further interest in the
affairs of the company. He denies any trust relationship on
account of his purchase of the property, or that any liability
on his part to defendant exists.

On the pleadings and depositions taken in the cause the
circuit court found that the defendant Lewis "occupied to-

ward plaintiff a position of trust and a fiduciary relationship requiring of him the utmost good faith and full disclosure of all matters affecting the plaintiff's interests; that the defendant failed to exercise the good faith and to make full disclosure required by him in the institution of the proceedings, securing the entry of the decree, orders and judgment herein complained of, causing the sale of the plaintiff's real estate, in the manner disclosed by the evidence herein, and himself becoming the purchaser thereof at an inadequate price;'' and the court was of opinion that the plaintiff was entitled to the relief prayed for, and entered the decree hereinabove referred to, and of which defendant now complains.

We observe that the court below, by its decree made no specific finding of positive fraud on the part of Lewis in his proceedings to obtain title to the land, and we find none.   He sued at law and there is no question but that the president of the company received through the statutory attorney the notices of motion for judgment; and there is little doubt of the fact that through the same source he received the summons served upon the attorney in fact, who acknowledges it was served upon him, and swears that he personally mailed it to S. P. Campbell, the president, at Montgomery, W. Va., where he resided.

But pertaining to the question of good faith the defendant Lewis knew that the amount of his claim had been challenged by a member of the board of directors a short time before his suit, and no minute of the board of directors was proven showing that the amount of salary had ever been agreed to. It is true a letter of one of the directors to Lewis was introduced tending to show that the sum claimed had been agreed upon.   A very potent fact, not controverted, and much relied on as evidence of lack of good faith, is that Lewis then and still, not only a director, stockholder and general manager of the company before bringing his suit upon motion for judgment, exercised the right to discharge the regular counsel for the company, J. E. Campbell, who was also the attorney in fact to accept service of process, and then attempted to employ him as his attorney to represent him in his suit against the company, which employment was properly declined on ethical

grounds. Being so related to the company, as director, stock-holder and general manager, secretary and treasurer, the utmost good faith, was demanded of him. No stockholders' or directors' meeting was called by him to lay his matters before them, nor to advise them of his efforts to beguile their regular attorney and deprive the company of his services and protection. Some one or two of the directors say they had no notice of the actions on the part of Lewis, and that they were depending on the company's attorney, J. E. Campbell. The explanation of Lewis for discharging Campbell was that as the company had suspended business there was no need of any attorney. It is not shown that Campbell was on a salary, and only his fees for special work could have accrued subsequently. Lewis found it necessary thereafter to have counsel in one suit brought by the company and another brought against it, in which he employed Judge Cato, his attorney in his causes brought against the company, and paid him liberal fees therefor out of the funds of the company. Lewis knew that the other directors and stockholders had not been very active in the business, on account of the smallness of their respective interests, no doubt, and that all relied upon him and the company's attorney to protect their interests. The board of directors show that the several steps taken by Lewis after discharging Campbell and employing Judge Cato were conducted in very rapid succession so that the suit at law brought September 15, 1921, resulted in a judgment October 8, 1921, docketed December 3, 1921; that execution was sued out February 28, 1922, was returned March 4, 1922, and the chancery suit was brought the same day to enforce the judgment by a sale of the land. Summons was returnable at March Rules 1922, bill filed, and decree *nisi*, and set for hearing April Rules 1922, decree of sale June 3, 1922, and the land purchased by Lewis and confirmed to him shortly afterwards. And at no time during those proceedings did Lewis call the proceedings to the attention of the board of directors or warn them that they were about to lose their property to him by said suit. Can there be any doubt as to what his duties were as general manager, if suits were being prosecuted by some other persons? He was not only a stockholder and director,

but the general manager, and the largest stockholder, and in possession of all the property, assets and books of the company. It is shown that there was considerable personal property and money in his hands and possession, when the sheriff returned his execution ''No property found'', necessary to give the court jurisdiction to entertain the bill and decree a sale of the land to satisfy the judgment. This was some evidence of bad faith and a purpose to thereby acquire title to the land, standing in the relationship of trust and confidence he did at the time of the sale and purchase of the property. At one time it seems to have been held in some jurisdictions that a director or other officer of a corporation could not because of his trust relationship become the purchaser of corporate property. In others, and by the weight of authority such purchases have been upheld at least if the price has been fair and the officer has not been guilty of bad faith, and the courts now hold that such sales and purchases are not wholly void but only voidable, but that it is always voidable when the purchase by the officer is, because of the facts attending the particular purchase, a breach of trust, or when the purchaser has not been in good faith or is unfair, and the rule approved is that when the sale is attacked it must be careful to scrutinize all the acts connected therewith, and the sale either set aside or the officer held as trustee until it is clearly shown to be fair, and that he acted in good faith, i. e. the burden of clearly showing such fairness and good faith is on the purchasing officer. 4 Fletcher Cyc. on Corp. 3534; 2 Thompson on Corp. (3rd ed.) Sec. 1357. In this state agreeably to the general rule we have said that when it is shown that the interest of such disqualified officer is more nearly conserved by his purchase than otherwise, and that he may have thereby been influenced in his purchase to the prejudice of the company, and though not shown to have intended to defraud, the transaction will be subjected to the closest scrutiny, and if found not fair to all interests represented, it will be voided. *Tierney* v. *United Pocahontas Coal Company,* 85 W. Va. 545, 559.

The strongest evidence of unfairness in this case is the price at which the property was sold by Judge Cato, Lewis' attor-

ney, acting as commissioner. The evidence is that the price was $3,100.00, just about one-third of the appraisement. Lewis had sold the property to the company for $8,000.00. The company subsequently purchased and installed $1,800.00 worth of new machinery, which was used but a short time, increasing the intrinsic value of the land, treating this material as a part of the realty, as the defendant claims.

In the case of *Marr* v. *Marr*, 73 N. J. Eq. 643, 133 Am. St. Rep. 742, said by counsel for defendant to represent an extreme view of the law, it is held that an officer, at the same time a creditor, while he may assume a position antagonistic to his company and its stockholders, by bringing action and prosecuting it to judgment and execution for the recovery of his debt, yet if he does so, he must relinquish his trust *pro hac vice*, not covertly, but openly and with fair notice to his company, and whether such notice should be given to the stockholders or directors may depend on the circumstances. It certainly seems quite unfair that defendant should have acquired such a great advantage over his associates as he is shown to have succeeded in doing in this case. We have decided in several familiar cases that a party holding a fiduciary relation to trust property can not either directly or indirectly become the purchaser thereof, without rendering the sale voidable, at the mere pleasure of the beneficiaries. *Newcomb* v. *Brooks*, 16 W. Va. 32, 59; and this rule embraces practically all classes of fiduciaries, including directors of corporations. *Reilly* v. *Oglebay*, 25 W. Va. 36, 42-43; *Elliott* v. *Farmers' Bank*, 61 W. Va. 641; 2 Thompson on Corporations, (3rd ed.), 782.

It seems unnecessary to elaborate the facts or discuss further the very familiar principles applicable to cases of this kind. Our conclusion is to affirm the decree.

*Affirmed.*