# CHARLESTON.

### JAMES *v.* PIGGOTT *et al.*

Submitted June 6, 1910.    Decided March 5, 1910.

1. FRAUD—*Elements—Statement Without Knowledge.*
   One under a duty to give information to another, who makes an erroneous statement when he has no knowledge on the subject, and thereby misleads the other to his injury, is as much liable in law as if he had intentionally stated a falsehood.    (p. 439).

2. TAXATION—*Redemption from Tax Sale—Payment or Tender.*
   If one buy land at a delinquent tax sale and direct the sheriff to report it, on his list of sales, as purchased by himself and certain other named persons, and the sheriff does so report it, the purchaser thereby makes such other persons his joint pur-

chasers and agents, and the former owner can redeem by pay-
ment, of the amount necessary, to any one of them.   (p. 440).

3.   SAME—*Redemption from Tax Sale—Excuse for Failure to Re-
     deem.*

     If the owner apply to any one of a number of joint purchasers,
     to redeem his land, within the time allowed for redemption, and
     is informed by him, either that he did not buy the land, or that
     it had been redeemed by another, whose duty it was to pay the
     taxes, and the owner relies upon such statement and is thereby
     misled, he is excused from making further effort to redeem.
     (p. 439).

4.   SAME.

     Such misleading information, given to the owner by any one
     of a number of joint purchasers, affects the rights of all, and
     amounts to a fraud upon the owner.   (p. 440).

5.   DEPOSITIONS—*Time for Taking—Taking Before Answer.*

     Depositions taken, on proper notice, by plaintiff to prove the
     averments of his bill, before answer filed and issue joined, can
     be read on the hearing of the case.   The taking of the deposi-
     tions before answer, is no cause for their suppression.   (p. 440).

6.   ABATEMENT AND REVIVAL—*Death of Party—Revival Against
     Heirs.*

     If a former owner of land, in whose name it is sold for taxes,
     has parted with title before the sale, and is made a party to a
     suit to avoid the tax-deed, and dies pending the suit, it is not
     necessary to revive the suit against his heirs.   (p. 440).

7.   TAXATION—*Tax Titles—Remedies of Purchaser of Invalid Title.*

     Notwithstanding a tax-purchaser has fraudulently prevented
     the owner from redeeming, he is, nevertheless, entitled to be re-
     imbursed, on the setting aside of the tax-deed, if the taxes for
     which the land was sold were a proper charge on the land.
     (p. 441).

8.   APPEAL AND ERROR—*Disposition of Cause—Modification or Re-
     versal.*

     If the decree avoiding the tax-deed, in such case, fails to pro-
     vide for his reimbursement, it is reversible error if the amount
     is more than one hundred dollars, and error which this Court
     may correct before affirming the decree, if the amount is less
     than one hundred dollars.   (p. 441).

9.   TAXATION—*Redemption from Tax Sale—Amount Required to
     Redeem—Interest.*

     A false statement made by the tax-purchaser to the owner,

which misleads and prevents him from redeeming, excuses a tender of the amount necessary to redeem and stops the accrual of interest. (p. 441).

(BRANNON, PRESIDENT, absent.)

Appeal from Circuit Court, Wood County.

Bill in equity by William James against J. T. Piggott and others. From a decree for plaintiff, defendants J. T. Piggott and others appeal.

*Modified and Affirmed.*

*Dave D. Johnson,* for appellants.

WILLIAMS, JUDGE:

J. T. Piggott, R. H. Piggott and James A. Watson have appealed from a decree of the circuit court of Wood county, made on the 4th of December, 1905, setting aside a tax deed made to them on the 19th of February, 1901, for two tracts of land containing 12 acres and 47 acres, respectively, sold in February, 1900, for the delinquent taxes of the year 1897, assessed in the name of T. R. Clinton.

William James, the owner, brought the suit, and charges that the fraudulent conduct of defendants prevented him from redeeming. The land was conveyed to plaintiff by John L. McGee, trustee, by deed dated October 10, 1897. The taxes for that year had been assessed against the land in the name of T. R. Clinton, the former owner, and this is the tax for which it was sold. At the time plaintiff purchased from McGee there was an agreement between them that McGee should pay all prior taxes.

The land was bid in, at the tax sale, by R. H. Piggott, son of J. T. Piggott, and, at his request, the sheriff reported it, on his sales list returned to the clerk's office, as purchased by "Piggott, Watson & Piggott." J. T. Piggott and James A. Watson both testify that they did not purchase the land, and did not know that they had been reported as purchasers until after the clerk had made them a deed. In the fall of 1900, long before the redemption year expired, plaintiff, hearing that his land had been sold for delinquent taxes, went to see the sheriff, and inquired of him concerning the rumor of the tax sale, and was told

that the land had been sold to "Piggott & Watson." He then went to see McGee who was under obligation to him to pay the taxes. McGee insisted that he had paid the taxes for 1897, but, not finding the receipted tax bill, he told plaintiff to see Watson and Piggott, and ascertain from them if they had bought the land twice, and if they had, to redeem it. They had bought it once before, in 1898, at a tax sale, for the taxes of 1895, and Mc Gee had redeemed it, and he supposed this was the sale that plaintiff had heard of. In two or three weeks after this conversation with McGee, plaintiff again went to see the sheriff, to make sure that it was the taxes for 1897 for which the land was sold, and was told by him that it was. He then went to Watson's office and told him that he wanted to redeem the T. R. Clinton land. He says that, after examining his book of accounts, Mr. Watson replied that Mr. McGee had settled the taxes. Plaintiff further says that, believing the land had been redeemed, he gave the matter no further attention, until the time of redemption had expired, and he was notified by R. H. Piggott to surrender possession. Mr. McGee corroborates plaintiff's testimony in relation to transactions and conversations between themselves, and further testifies that, in December, 1900, he saw James A. Watson and J. T. Piggott in the county clerk's office in Wirt county, and asked them if they had purchased the land; that they then asked him if he had ever redeemed it from them, at any time, and he said he had; and that they both replied that, if he had ever redeemed it, they did not have it. Thereafter McGee made no further investigation of the matter. S. W. Cain, clerk of Wirt county court, corroborates McGee. He testifies that Mc Gee spoke to Watson and J. T. Piggott concerning the redemption of the Clinton land, and that Piggott replied that, if he had redeemed it once, they did not have it, "for they had only purchased it once."

R. H. Piggott testified that he bought in the land at the tax sale, and, finding that he did not have money enough to pay for it, went to his father, J. T. Piggott, and Mr. Watson and told them that, if they would endorse a note for him, he would get it discounted, and would pay for the land and have it reported as purchased by Piggott, Watson & Piggott; that they thereupon endorsed the note for him; that he intended that each should

have a one-third interest. But, he says that he did not inform them that it was the Clinton land he had purchased.

There is very little conflict in the testimony, and enough of it has been referred to to show the bearing it has on the matter of fraud charged in the bill. Whether the statement made to plaintiff by Watson, or the one made to McGee in the Wirt county clerk's office by Watson and J. T. Piggott, were made with intention of deceiving and misleading, or were made in ignorance of the facts stated, is not material, for the reason that the motive does not alter the effect thereby produced upon the minds of plaintiff and McGee, either of whom had the right to redeem —the former because he was the owner, and the latter because he was bound by agreement to pay the taxes. Let us, therefore, take the more charitable view, and say that neither Watson or J. T. Piggott knew, at the time they made those statements, that they had been reported as joint purchasers of the land with the son of J. T. Piggott. Still the legal effect of those misstatements is the same as if an intention to deceive had then been present in their minds. There can be no question that plaintiff and McGee relied upon that information, and were thereby misled, and prevented from redeeming the land. One who is under a duty to give informaiton to another, and who states a fact to be true when he has no knowledge on the subject, and thus misleads the other to his injury, is as much liable in law as for a fraud, as if he had wilfully misstated a fact to be true when he knew it to be false. *Crislip* v. *Cain,* 19 W. Va. 438; *Mason* v. *Chappell,* 15 Grat. 572.

It is asserted in brief of counsel for apellants that plaintiff and McGee had no right to rely upon the statements made by Watson and Piggott, because their interests were adverse. True, their interests were adverse, and true it is that the record was open to the inspection of all. But those things are no excuse, or justificaton for the deceit. They had a right to rely upon a statement of any one of the joint purchasers, that the land had been redeemed, and the purchasers were under a duty to give correct information, if they undertook to give any at all. Suppose plaintiff had examined the record, he would have learned no more than he had already been told, that is, that the land had been purchased by Piggott, Watson & Piggott. The record

would not have disclosed whether or not the land had been redeemed. They had no right to deposit the money with the clerk. The statute, sec. 16, ch. 31, Code 1906, does not authorize payment, in redemption of land sold at a tax sale, to be made to the clerk, unless the purchaser refuses to receive the money, is a non-resident, or can not be found. In this case the purchasers were known, were residents of Wood county, were actually found, and did not refuse to receive the money, but said the land had already been redeemed, and that they did not purchase it.

R. H. Piggott has no right to complain, because he should have informed his joint purchasers of their interest with him. If he had done so, the land would have been redeemed. He is in no better situation than the others. By having them reported as joint purchasers with himself, he made them his partners, or agents, and it became the duty of any one of them to accept the redemption money for all. The law imposes no obligation on the owner to go to each one of several joint purchasers, and pay to him his several share of the purchase money.

It is insisted that exceptions to plaintiff's depositions should have been sustained, on the ground that they were taken before answer filed, and before issue joined. There is a rule of practice forbidding the taking of depositions to prove a matter before it has been pleaded. *Goldsmith* v. *Goldsmith,* 46 W. Va. 426; *Edgell* v. *Smith,* 50 W. Va. 349. That is because of the familiar rule of procedure which requires that averment shall precede proof. But in this case plaintiff had filed his bill before taking his proof, and we know of no rule of practice forbidding a plaintiff to support his allegations by proof, even before they have been denied, if he desires to do so. True, it might thereafter develope that he had gone to unnecessary trouble and expense to do so, because his bill might be taken *pro confesso.* The court did not expressly rule on these exceptions, but the final decree has, in effect, overruled them, and correctly so.

Upon the death of T. R. Clinton the suit was properly revived against his administratrix. Title, both legal and equitable, had passed from him by virtue of the trust deed to McGee, and by the sale and conveyance, in pursuance thereof, by McGee, trustee, to James. The title was fully before the court. There is no reason for a revival of the suit against Clinton's heirs.

Before this suit was brought, and shortly after the tax deed was executed, Piggott, Watson & Piggott had brought an unlawful detainer suit before a justice of the peace to recover possession, and that suit was perpetually enjoined. It follows from what we have already said that this was not error.

The bill avers a tender of the money necessary to redeem, but the decree cancels the deed without directing its payment. This was error. One who seeks relief in equity must do equity. The taxes were properly assessed and constituted a charge on the land. The land was bound for the taxes, and the state had a right to sell it. This right is not questioned by the bill. Notwithstanding the owner was prevented from redeeming by the misleading information given to him by the purchasers, still the court should have required him to repay to them the amount of the taxes with interest thereon at the rate of twelve per centum per annum, from the date of their purchase up to the time he applied to Watson to redeem. *Lohr* v. *George,* 65 W. Va. 241. Equity makes a similar application of the rule when, on setting aside a fraudulent conveyance, it remits the fraudulent grantee to his former rights, and when it subrogates him to the rights of creditors whose prior liens he has paid. *Kimble* v. *Wotring,* 48 W. Va. 412; *Duke* v. *Pigman,* 110 Ky. 756, 62 S. W. 867; *Irish* v. *Clayes,* 10 Vt. 81; *Ladd* v. *Wiggin,* 35 N. H. 421, 69 Am. Dec. 551; *Arnold* v. *Hoschildt,* 69 Minn. 101, 71 N. W. 829; 20 Cyc. 637.

Plaintiff did not actually tender the amount of money necessary to redeem the land, but Watson's statement to him, that the land had been redeemed, was tantamount to a refusal to accept it, and is a good excuse for not making an actual tender. *Poling* v. *Parsons,* 38 W. Va. 80; *Koon* v. *Snodgrass,* 18 W. Va. 320. The decree should have directed plaintiff to pay to appellants, but without interest, the sum of thirteen and 23/100 ($13.23) dollars, that being the amount admitted by the bill, and tendered in court, as a condition precedent to the annulling of the tax-deed. But this sum, being below the appealable amount, does not call for a reversal of the decree. The appeal, having been allowed on other assignments of error which, although held not to be well taken, are jurisdictional, gives us the right to correct the decree, and then to affirm it. *Jenkins* v.

*Montgomery,* 69 W. Va. 795, 72 S. E. 1087. The decree will be modified so as to take effect only upon payment to appellants, or to the clerk of the court for their use, the sum of $13.23, without interest. And, as thus corrected, the decree will be affirmed, with costs in favor of appellee who has substantially prevailed.

*Modified and Affirmed.*