E. ST. CLAIR THOMPSON v. THE WHITEHALL COMPANY, J. C. PITMAN AND S. D. McKINNEY.

(Filed 14 December, 1932.)

**Taxation H g—Owner may redeem property within one year by paying taxes with interest and may rely on sheriff's statement of amount due.**

Under the provisions of 2 C. S., 8038, the owner or one having an interest in the title to lands which have been sold by the sheriff for taxes may redeem the lands thus sold within one year from the date of sale upon paying to the sheriff for the use of the purchaser the sum mentioned in the certificate with interest at the rate of 20 per cent per annum, etc., and where the owner or his agent inquires of the sheriff, or his deputy in charge, the amount to be paid for the redemption, such owner or his agent has a right to regard the amount so stated as correct, and upon the payment thereof within the time stated the tax lien will cease and the deed made to the purchaser will be avoided and an error of a few cents made by the sheriff in fixing the amount will not be held fatal under the doctrine of *de minimis non curat lex.*

APPEAL by plaintiff from *McElroy, J.,* at July Term, 1932, of MITCHELL. No error.

This is an action brought by plaintiff against defendants for the possession of a tract of land (describing same) containing 104 acres on the waters of Crabtree Creek, in Mitchell County, North Carolina.

The prayer is as follows: "Wherefore plaintiff prays judgment against the defendants for the sum of twenty-five hundred dollars

damages on account of defendants' unlawful and wrongful entry and trespass upon said lands and for feldspar and other minerals removed from said lands of the plaintiff herein; and for a restraining order restraining and enjoining the defendants from trespassing upon said lands and from mining and removing the minerals and feldspar therefrom; and for a judgment declaring the plaintiff the owner of said lands described in the first paragraph hereof; and for the cost of said action; and for such other and further relief as to the court may seem right and just."

An order was made as follows: "This cause coming on to be heard and being heard upon the defendants' motion to dissolve the temporary restraining order heretofore issued in this cause, and being heard, it is ordered, adjudged and decreed by the court that the said restraining order be dissolved upon the defendants executing a bond payable to the plaintiff in the sum of five thousand ($5,000) dollars conditioned that the defendants pay the plaintiff such damages as the plaintiff may recover of the defendants in this action," etc.

The defendant, the Whitehall Company, in its answer denied the material allegations of the complaint and claimed fee-simple title to the land in controversy, more accurately describing same under recent survey. J. C. Pitman and S. D. McKinney disclaimed any interest in the land in controversy.

The defendants' prayer: "Wherefore, the defendants pray the court that the Whitehall Company be declared by judgment to be the owners of the lands described in the answer, and that the plaintiff own no interest therein; and further, that the plaintiff's pretended title be declared void and removed as cloud of title upon the defendant Whitehall Company's land, as well as for the costs in this cause incurred; together with such other and further relief as to the court may seem equitable and just."

"By consent of the parties both plaintiff and defendants and their counsel, it is agreed that a trial by jury shall be waived by the parties, and that the cause shall be submitted to the presiding judge to find the facts and declare the law and the rights of the parties upon such issues as the court deems material in the ascertaining of the rights of the parties."

The trial judge found all the issues in favor of defendant, the Whitehall Company. The court below rendered judgment on the verdict. The plaintiff made numerous exceptions and assignments of error and appealed to the Supreme Court.

*Ervin & Ervin* for plaintiff.
*Watson & Fouts* for defendants.

CLARKSON, J. The land in controversy was owned by one J. L. Barnes, who left Mitchell County in 1901 and from 1902 until 1927 it was returned for taxes by his agent each year. On 3 June, 1927, J. L. Barnes conveyed the property in controversy to the Whitehall Company, the defendant, for the sum of $10,000. On 7 October, 1918, L. F. Burleson, sheriff and tax collector of Mitchell County, North Carolina, sold the property in controversy for taxes for the year 1917, at which time the property was bid in for E. St. Clair Thompson, the plaintiff.

The only legal controversy is over the sale for the taxes of 1917. Many issues were set forth and answered by the trial judge, by consent, a jury trial being waived.

One of the defendants', the Whitehall Company's, defense in this action is that the tax was paid by J. L. Barnes, or his agent, within the time allowed for the redemption of the property from sale. The tax receipt shows that the 1917 tax was paid on 7 November, 1918, precisely thirty days after the property had been sold for taxes.

2 C. S., 1919, sec. 8038, provides: "The owner or occupant of any land sold for taxes, or any person having a lien thereon, or any interest or estate therein, may redeem the same at any time within one year after the day of such sale, by paying the sheriff for the use of such purchaser, his heirs or assigns, the sum mentioned in his certificate, with interest thereon at the rate of twenty per cent per annum," etc.

The receipt is as follows: "Grassy Creek Township, Mitchell County, North Carolina, No. 561. 7 November, 1918. Received of J. L. Barnes his taxes for the year 1917, as follows: For State and pension tax $1.20, poll tax ........., county tax $1.42, school tax .81c, road tax $2.03, courthouse tax .49c, special school tax .61c, cost .70c, total $7.18—L. E. Burleson, per C. C. G.—D. S." The "C. C. G.—D. S." is C. C. Garland, deputy sheriff.

Garland testified, in part: "That is my signature on the receipt and the number corresponds with the stub. I tore this receipt out of this book and gave it to him. I turned over the money I collected to the sheriff. It was settled by these stubs." Defendants offered in evidence the tax book, and stub from which receipt was torn—showing No. 561 on the stub and No. 561 on the receipt.

A letter was written from Bakersville, Mitchell County, North Carolina, dated 8 January, 1920, by L. F. Burleson, ex-sheriff, to D. E. Hudgins, attorney, Marion, N. C., which is in part: "I have discovered that there was an error in the tax of Mr. Barnes, the land was sold when the tax had been paid." There was other evidence sustaining defendant, the Whitehall Company's, contention.

.

The issues on this aspect, which were answered by the trial court "yes," were as follows: "Did J. L. Barnes, the owner of the lands in controversy, within one year from the date of the sale thereof pay or cause to be paid to the sheriff of Mitchell County for the use of the purchaser or his assignees the sum mentioned in the certificate of sale, with interest thereon at the rate prescribed by statute, together with all costs and expenditures? Answer: Yes. Did J. L. Barnes pay or cause to be paid the amount of the tax on the lands in controversy for the year 1917, within twelve months from the day of the sale of the said property by the tax collector of Mitchell County, as represented to be due by said tax collector, together with costs and interest? Answer: Yes."

There is no necessity to consider other issues, these issues are sufficient to sustain the judgment of the court below. *Sams v. Cochran,* 188 N. C., at p. 734.

We think there was abundant competent evidence for the court to answer the above issues "Yes." The cost collected by the deputy sheriff Garland was 70c, it was contended that it should have been 12c more. Be that as it may, the evidence is that the land was sold in 1927 to defendants for $10,000—*de minimis non curat lex.* The deputy seemed to have given a receipt in full. We are not now concerned in this action with plaintiff's loss in returning and paying tax on this land after he had acquired a void deed. The sheriff, in January, 1920, after his deputy had been paid the back tax and cost, etc., wrote attorney Hudgins in regard to the error. It goes without saying that plaintiff knew this contention and in returning the land under his alleged tax title took chances.

In *Beck v. Meroney,* 135 N. C., at p. 534, is the following: "If the taxes, therefore, and the costs and interest had been paid by the plaintiff, tax debtor, within the year allowed for redemption, then the deed, being valid on its face, constituted a cloud on the plaintiff's title. When land is sold for taxes in this State the purchaser, during the time allowed for redemption, has a statutory lien upon the land for the taxes, costs and interest; but when the taxes and charges are paid within the year allowed for redemption the lien is discharged by the payment. The agent of the plaintiff approached the defendants for the purpose of redeeming the land and upon their refusal to receive payment he paid the amount to the sheriff of the county, who himself made out the amount estimated to be due. Because the sheriff made a mistake in the calculation of about fifty cents, the defendants insist that redemption did not follow the payment of the amount due by the sheriff's calculation. There can be nothing in that contention in reason, justice, or law. A taxpayer in this State has the right to rely, in redeeming his land

from sale for taxes upon the statement of the tax collector, the officer of the State for the collection of its revenue."

In the present action the taxpayer relied on the deputy sheriff, who had the tax book and had all the indicia of office, which Barnes' agent relied on and paid the back tax and cost, etc. See *Harnett County v. Reardon, ante,* at p. 272.

There was some discrepancy in the acreage of the land in controversy, but it is correctly set forth in the defendant's, the Whitehall Company's, answer and in the judgment of the court below. In the judgment of the court below, we find

No error.