SCHUMAN *v.* SANDERS.

4-5956                                   140 S. W. 2d 121

Opinion delivered May 6, 1940.

*George W. Dodd,* for appellant.

*Joseph R. Brown,* for appellee.

McHANEY, J. On November 8, 1930, appellee, Jackson, acting for Mrs. S. M. Bell, loaned to I. S. Simmons $1,600, for which Simmons and wife executed their promissory note, secured by a mortgage on lots 23 and 24, block 4, Bocquin Addition to Fort Smith. Taxes on said lots for 1931 not having been paid in 1932, same were

sold to the state. They were not redeemed in two years and in 1934 were certified to the state. On October 5, 1935, appellee, Jackson, being advised by the county clerk that he could do so, attempted to redeem from said sale under the provisions of act 18 of 1935, and received from the county clerk a certificate of redemption of said property in the name of Mrs. Bell. Thereafter said property again forfeited for the non-payment of taxes, and, on December 21, 1937, appellee again redeemed same, but in his own name. He thereafter paid the taxes for 1938 and 1939. The mortgagor, Simmons, being unable to pay his debt, conveyed said property to Mrs. Bell on August 5, 1934, who, in 1936, conveyed to appellee, Jackson, who has been in possession since 1934.

Based on the forfeiture and sale to the state in 1932 for the tax of 1931, the state, in 1937, brought a confirmation suit against this and other lands in Sebastian county, and secured a decree on August 31, 1937, pursuant to act 119 of 1935, and on October 1, 1937, conveyed the lots in controversy by deed to appellant, for a consideration of $107.75, which deed was duly recorded.

Appellant brought this action in the circuit court in ejectment, and deraigned his title from the state by deed from the land commissioner, based on the forfeiture and sale aforesaid. Appellee Jackson defended on the ground that appellant's tax deed was void on account of his (Jackson's) redemptions, possession and payments of taxes as above set out, and prayed a cancellation thereof as a cloud on his title. On his motion, the case was transferred to the chancery court, where, on a trial, appellant's complaint was dismissed and his tax deed canceled as a cloud on appellee Jackson's title. The case is here on appeal.

It is first argued that the circuit court erred in transferring this case to equity. There does not appear to have been any motion in equity to remand to the circuit court and no objection to the jurisdiction of the chancery court. In such a case, appellant will be held to have waived his objection to the jurisdiction. Appellee Jackson, being in possession through his tenant, Sanders,

the other appellee, filed his answer, setting up his title as above related, and praying a cancellation of the tax deed, under which appellant claims. This stated a cause of action cognizable only in equity and no error was committed in transferring the cause at law to equity.

Another contention of appellant is that the redemption certificate issued by the county clerk on October 5, 1935, was ineffectual as a redemption of said land from the sale in 1932 for the taxes of 1931. In 1935, the legislature enacted act 18, Acts of 1935, p. 39. It is there provided in § 1 that any owner or his agent may redeem any land sold to the state prior to January 1, 1934, for the non-payment of taxes thereon, by "payment of an amount equal to the taxes for which such land . . . was sold to the state, together with the penalty as now fixed by law and the costs paid by the state in acquiring title to the same under such forfeiture and also together with the amount which is the equivalent of the taxes which would have been due and payable from February 14, 1934, up to the date of redemption of such land . . .," provided such redemption must be effectuated on or before October 8, 1935. It is also provided therein that such land may be redeemed "upon application to the State Land Commissioner, if such land has been certified to that official, or to the county clerk, if for any reason such land has not been certified by the county clerk to the State Land Commissioner."

It is true that the lots here involved were certified to the state in 1934, and that appellee Jackson, in redeeming same, did not literally comply with said act 18 by making application to the State Land Commissioner instead of to the county clerk, but it is also true that he did redeem from the forfeiture and sale to the state, paid the sum of money necessary to redeem, and that said sum was distributed as the law directs, the state getting its part of the taxes. It is also true that these lots were placed back on the tax books and that the taxes have been paid on them by said appellee every year up to and including 1939, for on December 21, 1937, Jackson again redeemed from a second tax sale, pay-

ing the taxes for 1934-5-6, and was given a second redemption certificate. He thereafter paid the taxes for 1937 and 1938, and has presumably paid them for 1939, a fact which the record does not disclose. If the title of the state to this land was not redeemed, how did it get back on the tax books?

It was the evident purpose of said act 18 of 1935 to permit the owner to redeem his forfeited land by the payment of one year's taxes and the tax accruing subsequent to February 14, 1934, so as to get the land back on the tax books. It was not the purpose of the state to deprive the true owner of his land. This act was one of generosity on the part of the state to its citizens and other owners of real property, passed as an emergency measure during the depression, and, we think it ought to be liberally construed so as to best accomplish its benevolent purposes. The only mistake appellee made was in redeeming from the county clerk instead of the State Land Commissioner. It is conceded that all taxing agencies, including the state, received their just proportions of the redemption money, and we think it would be sacrificing substance to form to hold the redemption ineffective. It is true the tax sale was confirmed in 1937, but at that time there was nothing to confirm as a redemption had been effected two years prior thereto, and, as to these lots, the court was without power to act.

We recently held in *Commercial National Bank* v. *Cole Building Co., ante,* p. 212, 138 S. W. 2d 794, that the effect of a confirmation decree rendered pursuant to the provisions of act 119 of 1935 is to cure all tax sales where there was not lacking the power to sell. And we have held such decrees impervious to collateral attack, such as this is, where the owner had actually paid the tax. *McCarter* v. *Neil,* 50 Ark. 188, 6 S. W. 731; *Pattison* v. *Smith,* 94 Ark. 588, 127 S. W. 983. Here the situation is different. A redemption from a valid tax sale, after forfeiture, sale and certification to the state, is effected under a grace act upon the part of the state, the land placed back on the tax books and all subsequent taxes paid, the owner acting on the honest belief that his

land is clear of all tax liens. It would be an anomalous situation if the state could then come in on a mere technicality of form, bring a suit *in rem*, without actual notice to the owner, get a title confirmed it did not have, convey same to a tax title speculator and deprive the true owner of his home and curtilage, and it is one to which we cannot give assent.

The suggestion by appellant that appellee failed to pay a sufficient amount to redeem the land is one that does not concern him as he was not the tax purchaser and, therefore, has no interest in the amount paid for redemption. But assuming that the clerk made a mistake in the amount necessary to redeem the lots, it could not have the effect of avoiding a redemption otherwise valid.

We find no error, so the decree is accordingly affirmed.

GRIFFIN SMITH, CJ., SMITH and BAKER, JJ., dissent.

GRIFFIN SMITH, C. J. (dissenting). The majority opinion adds to existing inconsistencies in the construction of tax titles, and accentuates confusion.

In *Commercial National Bank, Trustee, v. Cole Building Co., ante,* p. 212, 138 S. W. 2d 794, it was held, in effect, that where confirmation has been had under the provisions of act 119 of 1935, the former owner of the forfeited property could not attack the decree collaterally, even though it might be possible to show that the taxes had been paid prior to sale by the collector.

The majority opinion in the instant case correctly holds that the proceeding constitutes a collateral attack. In the Cole Case we said: "The Court had jurisdiction to render this decree [confirming the sale under provisions of act 119 of 1935] and it is impervious to the collateral attack now made upon it if the power existed to sell the land."

In the case at bar the taxpayer defaulted, and insofar as the record discloses sale to the state was valid. Appellee undertook to redeem from the county clerk after

the property had been certified to the state. At that time the land commissioner alone had authority to sell the property, or to certify redemption.

In the majority opinion it is said: "It is true that the lots here involved were certified to the state in 1934, and that appellee Jackson, in redeeming same, did not literally comply with said act 18 by making application to the state land commissioner instead of the county clerk, but it is also true that he did redeem from the forfeiture and sale to the state, paid the sum of money necessary to redeem, and that said sum was distributed as the law directs, the state getting its part of the taxes."

But *did* Jackson redeem? He did not comply with the law, nor did the money he paid to the county clerk reach the state in the regular course of distribution, as the law directs.

It seems that the county clerk paid the county collector the money Jackson paid in his effort to redeem. The collector, in turn, remitted to the state 8.7 mills for distribution to the several state agencies participating in the millage tax.[1]

Money paid into the state land office in purchase of forfeited property constitutes, first, a fund from which expenses of the land office are paid. The residue belongs to the permanent school fund. Act 55 of 1933 provides that this fund ". . . shall remain inviolate and intact, and the interest thereon only shall be expended for the maintenance of the public schools of the state."

The General Assembly expressly provided that after lands had been forfeited redemption could be effectuated by application to the state land office after the clerk had cleared his records by certifying delinquencies. No other method was available to the taxpayer. Schuman

---

[1] The millage tax is apportioned as follows: Charities fund, 1.20; common school fund, 3.00; confederate pension fund, 2.00; sinking fund, .20; vocational education fund, .20; University of Arkansas, 1.00; State Teachers College, .20; Negro A. & M. College, .12; First District A. & M. College, .15; Polytechnic College, .15; Third District A. & M. College, .15; Fourth District A. & M. College, .15; School Supervision Fund, .18.

proceeded under the law. The majority opinion holds, in effect, that the law was merely a gesture.

Of more far-reaching effect in destroying accepted principles, however, is the holding that Jackson could interpose and successfully plead his so-called redemption in a collateral proceeding. There is no logical distinction between the instant case and the Cole Building Company Case.

SMITH, J. (dissenting) If it were conceded that the redemption of the land had been properly effected, this was, at last, nothing more than the payment of the taxes. The confirmation decree imports the finding that the taxes had not been paid. It could have been rendered upon no other assumption; and if they were paid, that defense should have been interposed in the suit to confirm the tax forfeitures.

In the early case of *Wallace* v. *Brown,* 22 Ark. 118, 76 Am. Dec. 421, a tax sale had been confirmed where the owner had paid the taxes for which the land forfeited to the State. But it was held that this defense should have been interposed against the rendition of the confirmation decree, and could not be interposed when that decree was collaterally attacked, as is done in the instant case. The opinion in the recent case of *Commercial National Bank* v. *Cole Bldg. Co., ante,* p. 212, 138 S. W. 2d 794, cites other cases to the same effect. The case of *Pattison* v. *Smith,* 94 Ark. 588, 127 S. W. 983, cited in the majority opinion, cites still other cases to the same effect.

In this last-cited case, under a decree rendered upon constructive service, a tract of land was ordered sold for the non-payment of taxes which had been actually paid. The decree was collaterally attacked on that account, but it was held that this could be done only upon the showing that the decree of sale had been procured through fraud practiced upon the court in its procurement. The cases of *Williamson* v. *Mimms,* 49 Ark. 336, 5 S. W. 320; *Doyle* v. *Martin,* 55 Ark. 37, 17 S. W. 346; *Burcham* v. *Terry,* 55 Ark. 398, 18 S. W. 458, 29 Am. St.

Rep. 42; and *Jefferson Land Co.* v. *Grace*, 57 Ark. 423, 21 S. W. 877, were cited in support of that holding.

The majority opinion apparently recognized the effect of these cases, but refused to enforce their holding as being inequitable. That question was involved in all those cases. It is never equitable to sell a man's land for taxes where he has paid the taxes. The question whether the taxes were in fact paid is involved in all these confirmation proceedings. If they were paid, that fact is a complete defense to the confirmation suit, and would prevent the rendition of the confirmation decree; but, like any other defense, it must be interposed in the suit where that question is involved and is decided, and not later in another suit where the confirmation decree is collaterally attacked.

For these reasons, in addition to those stated by the Chief Justice, I dissent, and am authorized to say that he concurs in the views here expressed, as does also Mr. Justice Baker.