MARLEA CORPORATION

*v.*

WILLARD CASTO

(No. 13723)

Decided April 7, 1978.

*M. Joseph Thomas,* for appellant.

*Oliver D. Kessel,* for appellee.

McGRAW, JUSTICE:

In 1951, W. D. Burrus and his wife bought 1.6 acres in Kanawha County, In 1952 they jointly conveyed .18 acre of the 1.6 acre tract to Ida Rupp. The entire tract remained assessed to Burrus until 1966 when Burrus, his wife, and Ida Rupp conveyed to Marlea Corporation what was intended to be the entire 1.6 acres originally purchased by the Burruses. An erroneous metes and bounds description appears in the deed to Marlea which encompassed only the .18 acre tract conveyed from Burrus to Rupp instead of the full 1.6 acres conveyed by the general description.

After recordation of the deed to Marlea, the assessor, apparently relying upon the incorrect metes and bounds description rather than the general description, both contained in the deed to Marlea, assessed .18 acre in the name of Marlea Corporation and assessed .88 acre in the name of Burrus.[1] As a result of the two land book entries, Marlea did not receive a tax ticket for the .88 acre portion of the parcel. Taxes were not paid on this portion in 1966 and 1967, and the parcel was purchased for

---

[1] This figure of .88 was erroneously deduced by an unknown employee of the assessor's office who must have incorrectly deducted .18 from 1.6.

500

the state by the sheriff at the auctions for each of these years.

The record shows that Marlea's principle officer, Lee Lewis, and his lawyer, A. T. Ciccarello, went to the auditor's office in February of 1969 (within the statutory 18 month period)[2] to attempt to redeem the property. Carl Fisher, Assistant to the Director of the Land Department in the auditor's office, testified by deposition that he remembered when the two came to his office to redeem the property and to pay all the taxes, that there was some error, and that all the taxes were not paid. He later, at a hearing held subsequent to this deposition, offered the incredible testimony that the defendant "wasn't interested" in redeeming the land in question.

Appellant's most forceful exhibit is the Certificate of Redemption acquired from the auditor. This certificate dated February 28, 1969, notes the receipt of $408.09 "in full payment of taxes, interest and costs due, for the years shown, against the land described ... This certificate is a receipt for the money paid and a release of the State's title or claim to the land redeemed for the years shown." The years shown are 1966 and 1968 for property assessed in the name of "Burrus, W. D. and B. R." and in the mame of "Marlea Corporation, Inc.",

Lewis and Ciccarello later checked to make certain that the redemption was recorded in the assessor's records as well as in the auditor's office at the Capitol. Pages from the assessor's land books show the notation "redeemed from auditor 1966 thru 1968 ext." for both the Marlea and Burrus parcels.

Nevertheless, the auditor certified to the Commissioner of Delinquent and Forfeited Lands the .88 acre for nonpayment of taxes and upon certification the Commissioner sold for $1,275.00 the .88 acre to appellee Casto for nonpayment of 1967 taxes.

On August 30, 1971, the parcel was conveyed to Casto by the Deputy Commissioner of Forfeited and Delin-

[2] West Virginia Code § 11A-3-8.

quent Lands. Marlea filed suit to enjoin Casto from interfering with the property and to set aside this deed. Casto filed a cross-complaint for rents owed. The circuit court referred the case to Riggs, a commissioner, who found that the sale to Casto by the Deputy Commissioner of Forfeited and Delinquent Lands was in compliance with the Code and served to convey unto Casto the .88 acre in dispute. The commissioner's findings were ratified and adopted by the circuit court.

I

The sole question we address in this case is whether this Court should discharge a tax sale and protect the title of an owner who attempted in good faith to redeem, but who, because of a mistake by an officer charged with effectuating redemptions paid less than the full amount necessary for total redemption.

Here the principal officer of Marlea Corporation did everything humanly possible to ameliorate the incredible string of mistakes and errors that preceeded and followed the tax delinquencies. After first suspecting some abnormality while within the 18 month statutory redemption period,[3] he contacted the corporation's attorney, and the two went to the State Auditor's office at the State Capitol to redeem the property. An official in charge of redemptions confirmed this and testified in his initial deposition that he understood that they wanted to take care of all taxes due at that time. But for some reason the 1967 taxes were not included in his calculation of the amount necessary to be paid for the redemption, an occurrence he characterizes as inexplicable error. Thereafter, the two, apparently prejudiced by the succession of errors they had confronted thus far, sought to verify that the redemption had been made. When they discovered that the records in the assessor's office showed "redeemed from auditor 1966 thru 1968 ext." they undoubtedly were satisfied that the landowner's duty, as declared in W.Va. Code, 11A-3-1 to "bear a fair share of the costs of government," had been fulfilled.

---

[3] *Code* 11A-3-8.

A general statement of the relevant law is found in 85 C.J.S. *Taxation* § 894 (1954):

> It is the duty of the proper officer to impart correct information to those seeking to redeem from tax sales, and the right to redeem is not lost where a failure properly to redeem was caused by the fraud, mistake, negligence, or misleading advice of such an officer.

This same idea is expressed in one of the few treatises available to us on tax titles:

> If the owner has attempted in good faith to do all that the law requires of him, in order to redeem, but has failed, in consequence of being misled by the officials, the tax deed will not divest his title. Thus, when the owner offers to redeem land, it is the duty of the [official] to state correctly the amount necessary to be paid, and if he misinforms the owner, who consequently pays less than the true amount, it will not defeat the right of redemption. H. Black, The *Law of Tax Titles* § 362 (2d rev. ed. 1893); *accord,* 2 R. Blackwell, *A Practial Treatise on the Power to Sell Land for the Non-Payment of Taxes* § 717 (rev. 5th ed. 1889).

Nearly all of the cases which exemplify and apply this "almost universal rule", *see* Annot., 21 A.L.R.2d 1273, 1280 (1952), relieve a landowner who, when attempting to redeem, is misled to his detriment by erroneous information provided him by the official charged with the duty of effectuating redemption, and who, without fault on his part, relies and acts upon such information. *E.g., Schuman v. Sanders,* 200 Ark. 540, 140 S.W.2d 121 (1940); *Jones v. Sturzenberg,* 59 Cal. App. 350 210 P. 835 (1922); *Shuptrine v. Wohl Holding Corp.,* 147 Fla. 185, 3 So.2d 524 (1941); *Gage v. Scales,* 100 Ill. 218 (1881); *Corning Town Co. v. Davis,* 44 Iowa 622 (1876); *Tyler v. Burgeson,* 229 Mich. 268, 201 N.W. 185 (1924); *Stegall v. Miles,* 194 Miss. 353, 12 So.2d 537 (1943); *Thompson v. Whitehall Co.,* 203 N.C. 652, 166 S.E. 807 (1932); *Ludeman v. Armbruster,* 196 Okla. 452, 165 P.2d 835 (1946); *Hamady v. Verda,*

26 Erie Co. L.J. 275 (Pa. 1944). *See also James v. Piggott*, 70 W. Va. 435, 74 S.E. 667 (1912). Research does not reveal any contrary authority.

## II

Our law provides that lands purchased by the state for nonpayment of taxes shall be sold to the highest bidder only if such land has not been redeemed. *W.Va.* Code, 11A-4-3. The deputy commissioner has no jurisdiction to sell land that has been redeemed. It is fundamental law in this and most jurisdictions that, "Curative statutes, enacted for the purpose of giving validity to tax deeds, do not apply to jurisdictional defects . . ." Syl. Pt. 3, *Shaffer v. Mareve Corp.*, ___ W. Va. ___, 204 S.E.2d 404 (1974); *Pearson v. Dodd*, ___ W. Va. ___, 221 S.E.2d 171 (1975), *dismissed for want of federal question*, 429 U.S. 396, 97 S. Ct. 581, 50 L. Ed.2d 574 (1977). Furthermore, the curative statute, W.Va. Code, 11A-4-33[4] is expressly inapplicable to deeds of property upon which the taxes have been paid.

The efforts of Marlea Corporation to redeem, proven by the redemption certificate and testimony, supported by the notation in the assessor's records that a redemption was made, compels the conclusion that the sale is void because of a jurisdictional defect uncured by any

---

[4] 11A-4-33. Title acquired; effect of irregularities.

Whenever, under the provisions of this article, a purchaser his heirs or assigns, shall have obtained a deed for any real estate from the deputy commissioner, he or they shall thereby acquire all such right, title and interest in and to the real estate as was, at the time of the execution and delivery of the deed, vested in or held by the State or by any person who was entitled to redeem, unless such person is one who, being required by law to have his interest separately assessed and taxed, has done so and has paid all the taxes due thereon, or unless the rights of such person are expressly saved by the provisions of sections twenty-seven or thirty-four [11A-4-27 or 11A-4-34] of this article. The deed shall be conclusive evidence of the acquisition of such title. The title so acquired shall relate back to the date of the sale.

Except as otherwise provided in this section, no irregularity, error or mistake in respect to any step in the procedure leading up to and including confirmation of the sale or delivery of the deed shall invalidate the title thereby acquired.

statute. The efforts of Marlea are tantamount to a redemption, and the Deputy Commissioner of Forfeited and Delinquent Lands has no jurisdiction to sell land that has been redeemed. The burden imposed on landowners regarding taxation of their real property cannot be so great as to require independent verification or corroboration of information received from officials in charge of statutory redemption. No degree of care on the part of the landowner could have prevented this occurrence.

Perhaps our feelings are best expressed in one of the first cases that dealt with this same issue:

> It must be conceded that the payment of taxes is a duty, and a failure to perform it is the fault of the owner. But payment is one thing, and the steps leading to it are another. For the latter, the owner is not responsible. He cannot assess himself, or know what is charged against him. He must await the action of the agents of the law. He cannot pay until he is informed of what he is to pay. To perform the duty of payment he must apply to the [official] for the taxes charged against his land. If this officer fails to give him the information on demand, on what just principal shall it be said he has not performed his duty? It is said, there are the tax books open to inspection, let him search them. But this is neither his business nor his duty ... It is but just, then, that a bona fide attempt to pay all the taxes, frustrated by the fault of the [official], should stand as the equivalent of an actual payment. *Breisch v. Coxe*, 81 Pa. 336, 346 (1876).

For the reasons stated, the decree complained of will be reversed, and the cause remanded for an accounting or other proceedings consistent with this opinion.

*Reversed and remanded.*